UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA          :
                                  :
v.                                : CASE No. 8:11-CR-607-T-23TGW
                                  :            8:13-CV-336-T-23TGW
FRANCISCO ALBERTO                 :
HENAO-CHAVERRA                    :
_____:

REPORT AND RECOMMENDATION

The defendant filed a motion pursuant to 28 U.S.C. 2255 in which he alleged, among other things, that his attorney failed to honor his request to file an appeal on his behalf. The issue of whether that request was made and, consequently, whether the defendant is entitled to a delayed appeal, has been referred to me for a report and recommendation.

Based on the evidence presented at the hearing on this matter, I find that the defendant's former defense counsel consulted with the defendant about an appeal, but that the defendant did not ask the attorney to file an appeal. Consequently, I recommend that the defendant's request for a delayed appeal be denied.

## I.

A. The defendant, Henao-Chaverra, is a Columbian citizen who was aboard a fishing vessel containing 37 bales of cocaine that was interdicted by the United States Coast Guard off the coast of Costa Rica (Doc. 42, pp. 15-16).[1] On December 6, 2011, Henao was charged in a two-count indictment with conspiracy to distribute, and possession with intent to distribute, five kilograms or more of a substance containing cocaine (Doc. 12). Attorney James Armington, who speaks Spanish, was appointed to represent him pursuant to the Criminal Justice Act (Docs. 8, 9).

On February 7, 2012, the defendant pled guilty to count one of the indictment pursuant to a plea agreement (Docs. 42, 64). Under the agreement, count two of the indictment would be dismissed at sentencing (Doc. 42, p. 3). The defendant initialed each page of the plea agreement and certified at the end of the document that the plea agreement had been reviewed with him and that he understood its terms (see id., p. 17; Doc. 114).

---

[1] The defendant stated at the hearing that he speaks Spanish. Defense counsel said at sentencing that the defendant is also able to understand and read some English (Doc. 116, p. 7).

For consistency, the page numbers refer to the numbers assigned by CM/ECF.

The plea agreement identified a mandatory minimum prison sentence of ten years, but also provided that the defendant's substantial assistance could result in a departure from that minimum sentence (Doc. 42). Additionally, the plea agreement included a waiver of the defendant's right to appeal and right to collaterally challenge his sentence except on the grounds that the sentence exceeds the defendant's applicable guidelines range as determined by the court, the sentence exceeds the statutory maximum penalty, or the sentence violates the Eighth Amendment to the Constitution (id., p. 13).

During the plea colloquy that was translated into Spanish, I reviewed the terms of the plea agreement and discussed with the defendant other civil and procedural rights he was relinquishing by pleading guilty (see Doc. 114). The defendant confirmed that he had initialed each page of the plea agreement and signed it at the end, indicating that he and his lawyer reviewed each page of the plea agreement and that he understood each page of the plea agreement (id., pp. 5-6).

I explained that he was generally waiving his right to appeal pursuant to the plea agreement's waiver provision, which the defendant stated that he understood (id., pp. 23-24). Furthermore, I asked the defendant if he

had any questions concerning his limited appeal rights, to which he responded, "No, sir" (id., p. 24).

I concluded that there was a sufficient factual basis for the defendant's guilty plea; that the defendant understood the consequences of entering a guilty plea; and that he was doing so freely, intelligently, and voluntarily (Docs. 65, Doc. 114, pp. 27-28). Consequently, I recommended that the defendant's plea of guilty be accepted (Doc. 65). On February 23, 2012, United States District Judge Steven D. Merryday accepted that recommendation and adjudicated the defendant guilty of count one of the indictment (Doc. 75).

The defendant appeared for sentencing on May 3, 2012, and that proceeding was also translated into Spanish (Doc. 116, p. 2). Judge Merryday sentenced the defendant to nine years in prison on count one of the indictment and dismissed count two of the indictment (Docs. 96, 116, p. 11).

The government recognized at the sentencing the substantial assistance provided by the defendant (Doc. 116, pp. 5-6). Assistant United States Attorney W. Stephen Muldrow stated further that, "[Henao] has some more information he wanted to provide to me this morning and we're hopeful

that we'll be able to come back on a Rule 35 if things develop" (id., p. 6). Armington added, "[Henao] is continuing to cooperate and there's some special circumstances, he may be able to get some real good information from the other uncle, the organizer, that we're hoping that's going to pan out" (id., p. 7).

At the close of the sentencing hearing, Judge Merryday elaborated with respect to the defendant's right to appeal (id., pp. 14-15):

> Mr. Henao, in your plea agreement you have largely waived your right to appeal from this judgment and sentence unless I have sentenced you unlawfully, which typically means above the statutory maximum, in excess of the applicable Guidelines, or in some cruel and unusual manner. And I have done none of that, so I expect you have no right of appeal remaining. That is for you and Mr. Armington to discuss.
>
> If you lodge an appeal, there are two things that I need to tell you:
>
> First, you have a right to counsel on direct appeal. If you can't afford one, one will be provided at public expense, to the extent that you have a right to appeal. As it stands now, Mr. Armington would be required to preserve any appeal that you lodge unless other counsel is substituted for him by an order of the Court.

> Secondly, a notice of appeal ... must be filed with the Clerk of this Court in writing within 14 days and accompanied by a filing fee. If you have no money and cannot pay the fee, Mr. Armington can ask the Court to waive the fee and, if that's granted, you can proceed on appeal without payment.
>
> So once again, to the extent that you can appeal, one, you have a right to counsel on direct appeal; and, second, you have 14 days to appeal or you lose that right forever.

The defendant did not file a direct appeal of his conviction or sentence.

On February 5, 2013, many months after his sentencing, the defendant filed a Motion to Vacate his Sentence Pursuant to 28 U.S.C. 2255 (Doc. 112; Doc. 1 in 8:13-cv-336).[2] The defendant alleged, among other things, that defense counsel was ineffective because he "failed to consult with Petitioner regarding his appellate right, Petitioner's [sic] wanted to appeal" (id., p. 7).

The government filed a memorandum in opposition to the motion (Doc. 6 in 8:13-cv-336-T-23TGW) and attached an affidavit from Armington, who averred that he had reviewed with the defendant his appellate rights on

---

[2] Henao stated at the hearing that his motion was prepared by a prison inmate, who he alleges translated its contents into Spanish "word for word."

more than one occasion, and that Henao had stated that he did not want to file an appeal (Doc. 6-2). Specifically, Armington averred that, prior to the defendant pleading guilty, he reviewed with the defendant the plea agreement's waiver of the right to appeal sentence provision, which essentially meant that the defendant would be waiving his right to appeal, and that the defendant understood that provision (id., ¶3). Armington averred further that he (id., ¶5):

> discussed with the Petitioner his right to appeal and his previous waiver of that right, after the sentencing. In addition, [Armington] specifically discussed with the Petitioner that an appeal could jeopardize his current reduction of sentence and any further reduction pursuant to Federal Rule of Criminal Procedure 35(b). ... Petitioner understood well what he was doing and readily agreed that he did not want to file an appeal.

The defendant then filed a reply memorandum stating, for the first time, that his former counsel failed to follow his instructions to file an appeal (Doc. 7, pp. 17-18).

Noting the contradictory averments from the defendant and defense counsel, the issue of whether the defendant is entitled to a delayed appeal was referred to me to conduct an evidentiary hearing and issue a report

and recommendation (Doc. 8). Attorney Daniel M. Hernandez was appointed to represent the defendant (Doc. 10).

B. The evidentiary hearing was held on July 30, 2015. The defendant was present with his attorney (see Doc. 11). Assistant United States Attorney Muldrow appeared on behalf of the government. Spanish interpreter Ricardo Arenas translated the proceedings for the defendant. Testimony was received from the defendant and James Armington, the defendant's former counsel.

Defendant Henao testified first. He stated that, following the sentencing, he met with Armington at the Pinellas County Jail, and that they spoke about an appeal. Henao testified that he asked Armington to file an appeal of his sentence, but that Armington did not wish to help him. Henao stated that Armington told him that "we had nothing to appeal," and that Armington also said that he should not appeal because the sentence was satisfactory. Henao added that the sentence was not satisfactory to him.

Henao stated that he wanted to appeal his sentence because he did not feel like the government had rewarded him for the work he had done, and that he should have received a larger sentence reduction. On the other

hand, Henao testified that he understood that the Judge was "autonomous" regarding sentencing. Furthermore, Henao testified that he had planned to continue cooperating with the government with the hope of obtaining a further sentence reduction.

The government asked Henao whether he knew that he had waived his right to appeal in the plea agreement. Henao averred that he was unaware of the waiver because he does not read or write English. Henao also testified that he did not know about his right to appeal until District Judge Merryday told him at sentencing. However, upon my inquiry, Henao admitted that I had reviewed with him the appeal provision in the plea agreement during the plea colloquy. Furthermore, Henao recalled that I had explained to him the limited grounds under which he could appeal his sentence, and that I informed him that he could not appeal the court's calculation of the sentencing guidelines.

Attorney James Armington testified next. Armington stated that he spoke with the defendant in Spanish. He said that, after sentencing, he met with Henao at the Pinellas County Jail, and that he does not recall the defendant asking him to file an appeal. Armington elaborated that, although

he did not have an independent recollection of his meeting with Henao, he would have told the defendant, consistent with his conduct in every case, that there is a right to appeal, but that there was no basis for an appeal. Furthermore, Armington stated that he would try to dissuade the defendant from appealing his sentence because an appeal could harm him in subsequent Rule 35 proceedings. Armington added that, in this case, the government agents were very happy with Henao's level of cooperation, and that he would have explained to the defendant the potential for a Rule 35 sentence reduction down the road. Armington added, "I am sure I did that with [Henao]."

Significantly, Armington averred that he had a case note indicating that he and Hanao discussed an appeal, and that Henao said that he did not want an appeal. Furthermore, Armington testified that, if Henao had requested him to file an appeal, he would have done so.

Following this testimony, defense counsel requested that the court grant the defendant's motion based on his client's testimony that he requested an appeal. Counsel were given an opportunity for closing arguments, which they declined.

II.

Claims of ineffective assistance of counsel are considered under the standards set out in Strickland v. Washington, 466 U.S. 668 (1984). Under those standards, a defendant seeking relief on a claim of ineffective assistance of counsel, in general, has the burden of showing (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. at 687.

The Supreme Court has applied the principles of Strickland v. Washington to a claim of ineffective assistance due to counsel's failure to prosecute a direct appeal. Roe v. Flores-Ortega, 528 U.S. 470 (2000). If an attorney disregards specific instructions from a defendant to file a notice of appeal, the attorney acts in an unreasonable manner and the defendant is entitled to a belated appeal without showing that the appeal is likely to have merit. Id. at 477; see also Gomez-Diaz v. United States, 433 F.3d 788, 793 (11th Cir. 2005) (if an attorney fails to comply with his client's request to file an appeal, prejudice is presumed "regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver"). In Roe v. Flores-Ortega, the Supreme Court

also set out principles for resolving situations in which a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken. Id. at 477-81.

### III.

Henao asserts that counsel failed to follow his directive to file an appeal. Although the defendant averred in his initial memorandum that "[t]rial counsel failed to consult with Petitioner regarding his appellate right" (Doc. 1, p. 7), Henao admitted at the evidentiary hearing that he did discuss an appeal with Armington following sentencing. Henao's focus at the hearing was the allegation that he asked Armington to file an appeal. Furthermore, defense counsel requested the court to grant the defendant's motion based on the defendant's testimony that he asked for an appeal. Consequently, the principles set forth in Roe v. Flores-Ortega concerning consultation are inapposite. Accordingly, the claim, as asserted in testimony, is limited to the failure to carry out the request to file an appeal.

Therefore, the question here is simply whether or not the defendant asked Armington to file an appeal.

As indicated, Henao testified that, following sentencing, he requested Armington to file an appeal. Armington, on the other hand, testified that he does not recall the defendant asking him to appeal, that it is his protocol in every case to discuss the defendant's right to appeal following sentencing, and that his case note indicates that he discussed an appeal with Henao, but that Henao did not want to appeal.

If Henao's testimony on this point were accepted, that evidence would be sufficient to warrant the granting of a belated appeal. See Gomez-Diaz v. United States, supra, 433 F.3d at 793. However, I reject Henao's testimony because it is not credible for several reasons.

Initially, Henao's credibility is subject to question because he is a convicted felon and has an interest in the outcome of this matter. Furthermore, the defendant testified inconsistently on crucial facts, and he made statements under the penalty of perjury that were untrue. Therefore, I simply do not believe the defendant.

Foremost, the defendant gave contradictory sworn statements regarding what Armington told him about his right to appeal, which is the crux of this matter. Thus, Henao averred in his motion that "[t]rial counsel

failed to consult with Petitioner regarding his appellate right" (Doc. 1, p. 7). However, Henao testified that they did discuss an appeal at the Pinellas County Jail following sentencing, and that he had asked Armington to file an appeal of his sentence. Thus, Henao lied to the court regarding whether Armington had with him the critical conversation that underlies this dispute.

Furthermore, after admitting in his hearing testimony that he discussed his appeal rights with Armington, Henao misleadingly minimized Armington's counsel in this regard. Thus, Henao averred that Armington did not wish to help him. However, Henao stated that Armington had told him that he should not file an appeal, because there was "nothing to appeal" and his sentence was satisfactory. Furthermore, when I asked Henao if Armington advised him not to appeal because of the possibility of an additional reduction for further cooperation, Henao testified that Armington "didn't say anything to me." However, Henao admitted that, at that time he was aware of, and was hoping for, a further sentence reduction for additional cooperation with the government.

Additionally, Henao was blatantly untruthful when he testified that he did not learn of his right to appeal until Judge Merryday told him

during sentencing. Thus, I explained to Henao his limited appeal right during the guilty plea colloquy. Furthermore, in connection with Henao's execution of the plea agreement, Henao confirmed to me that his counsel had reviewed with him every page of the plea agreement, which plainly states, under the heading "Appeal of Sentence and Collateral Attack-Waiver," that the defendant "expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground," except for three enumerated grounds (Doc. 42, p. 13), all of which I repeated during the plea colloquy, and asked Henao if he understood these rights or had any questions about them (Doc. 114, pp. 23-25).[3]

This false statement appears to be an attempt to reconcile the glaring inconsistency between Henao's testimony that he requested Armington to file an appeal of his sentence, and Henao's acceptance of the appeal waiver, which shows that there was no basis to appeal his sentence.

---

[3] Henao testified (disingenuously) that he was not aware of the waiver provision because he does not read or write English. However, the change of plea hearing was translated into Spanish, and Henao does not dispute that Armington conversed with him in Spanish.

In all events, the defendant's false testimony clearly undermines his credibility.

Moreover, other circumstances of the case are not consistent with Henao's testimony that he directed Armington to file an appeal of his sentence. Most prominently, the defendant testified that he knew, when he purportedly requested Armington to appeal his sentence, that there was the possibility of a further sentence reduction. Thus, Henao testified that, at that point, he had planned to continue cooperating with the Government and was hoping for a further sentence reduction for his cooperation.

Notably, the sentencing proceedings reflect that this defense strategy was at the forefront. Thus, at sentencing, government counsel stated that the defendant's information had been "very useful," and that "[Henao] has some more information he wanted to provide to me this morning and we're hopeful that we'll be able to come back on a Rule 35 if things develop" (Doc. 116, p. 6). Similarly, Armington said that, "[Henao] is continuing to cooperate and there's some special circumstances, he may be able to get some real good information from the other uncle, the organizer, that we're hoping that's going to pan out" (id., p. 7). In sum, these circumstances undermine the

contention that the defendant requested Armington to file an appeal following sentencing because the defendant testified that, at that point, he hoped that he would be receiving a further sentence reduction for additional cooperation.[4]

Finally, the defendant's testimony is not credible because there was no issue to appeal. It is recognized that, under Roe v. Flores-Ortega, the lack of merit does not defeat the defendant's claim. Nevertheless, it has a bearing on the defendant's credibility.

The defendant pled guilty pursuant to a plea agreement, which he acknowledged greatly limited the grounds under which he could appeal. That appeal waiver, in conjunction with the defendant receiving a sentence below the minimum mandatory sentence, eliminated the possibility of a nonfrivolous appeal. Furthermore, the defendant was advised at the plea colloquy by me, and at sentencing by District Judge Merryday, that he was essentially waiving all of his appeal rights, which makes less credible the defendant's testimony that following sentencing he immediately requested

---

[4] It is also noted that the defendant's testimony that he requested an appeal because he was dissatisfied with his sentencing does not square with his earlier demonstration of remorse at the sentencing, including his comment that, "I'm willing to accept whatever Your Honor decides regarding my sentence" (Doc. 116, p. 8).

Armington to file an appeal. In other words, Henao's testimony that he requested Armington to appeal a matter that Henao was told was essentially unappealable strains credulity.

Finally, the defendant's testimony that he requested an appeal of his sentence contradicts the testimony of attorney Armington, and I find credible attorney Armington's testimony that he was not asked to file an appeal of this case.

In contrast to Henao, Armington has no interest in the outcome of this matter and has no apparent reason to prevaricate. Further, Armington testified that, if the defendant had requested him to file an appeal, he would have done so. Notably, there was no reason for Armington to deny such a request, as Armington is compensated for those services under the Criminal Justice Act.

Furthermore, unlike Henao's testimony, Armington's testimony is consistent with the circumstances of this case. Thus, Henao testified that Armington had told him that there was "nothing to appeal," which is consistent with the appeal waiver that shows there was no nonfrivolous ground for appeal in this circumstance. Furthermore, Armington's testimony

that he would have dissuaded Henao from filing an appeal because, not only would it be fruitless, but it could harm Henao's opportunity for a Rule 35 motion to further reduce his sentence, is consistent with the discussion during the sentencing hearing in which both parties expressed the expectation of further cooperation from Henao and the possibility of a Rule 35 motion.

In addition, as previously indicated, Armington testified that it is his practice with every client to discuss appeal rights following sentencing, and Armington averred that he had a case notation indicating that he had done so in this case, but that Hanao did not want to appeal. Moreover, Armington's affidavit dated June 4, 2013, reflects Armington's independent recollection of his conversation with Henao regarding his right to appeal (Doc. 6-2). In that affidavit, Armington expresses that Henao stated unequivocally that he did not want to file an appeal (id., ¶ 5).

In sum, it is the defendant's burden to show that he requested counsel to file an appeal. However, for all of the above reasons, I reject as not credible the defendant's testimony that he asked Armington to take an appeal. In other words, I find that the defendant did not request Armington

to appeal. I therefore recommend that the defendant's request for a belated appeal be denied.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 24, 2015

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).